73883. HILL v. PARADISE APARTMENTS, INC.
(357 SE2d 288)

McMURRAY, Presiding Judge.

Paradise Apartments, Inc., d/b/a Hollywood West Apartments ("Hollywood West") brought this dispossessory action against Barbara A. Hill, a tenant in a residential facility owned and operated by Hollywood West. Ms. Hill filed an answer and a bench trial was conducted which resulted in the trial court granting a writ of possession to Hollywood West for the apartment unit occupied by Ms. Hill. Ms. Hill appeals. *Held*:

1. In her first enumeration of error Ms. Hill contends the evidence adduced at trial was not sufficient to support the termination of her tenancy. We do not agree.

The rental agreement entered into between Hollywood West and Ms. Hill provides "[t]he Landlord may terminate this Agreement only for . . . serious or repeated damage to the unit or common areas . . ."

The evidence adduced at trial authorized a finding that Ms. Hill had repeatedly refused to comply with Hollywood West's request for Ms. Hill to prevent her child/children from utilizing common areas in the apartment complex for recreational purposes. Ms. Hill's failure to comply with this request resulted in damage to a recently landscaped common area. More specifically in this regard, Hollywood West's apartment complex manager testified as follows: "[Hollywood West's Attorney]: Did you have any discussion with Ms. Hill about her child playing on the grass? A. Yes I did . . . We have went down and . . . reseeded the area. I talked to Ms. Hill and some of the other tenants' kids that was playing on the grass. We called a landscaper in and had him to go down and . . . correct the problem. We had a big area there in front of Ms. Hill's building where the kids would play volleyball over the fence . . . I had talked to Ms. Hill about it. I talked to some of the other residents about it that lived in [the] building [where Ms. Hill lived] . . . Most of the residents, the residents sent their kids to the playground to play, all except Ms. Hill . . . [Ms. Hill] told me that she did not want her kids to play at the playground . . . I stated to her that was the onliest area for the kids to play and that was [the] onliest area the kids would be allowed to play . . . because we was improving the landscaping and doing a lot of seeding and planting bushes and so forth at the complex. But her kids never played at the playground. Q. Now, did you have occasion to have signs posted . . . asking the residents to keep off the grass? A. That's correct. We bought and posted keep-off-the-grass grass signs. Q. . . . [W]hat was Ms. Hill's response to the posting of those signs? A. There was none. I went back to work the next day, and someone had pulled the sign up. . . . Q. Was Ms. Hill's son the only child that continued to play on the grass in front of [the] building [where Ms. Hill lived]? A. He was the only child that continued to play on the grass . . . After I talked to the rest of the tenants and I sent out letters letting them know what we was doing to improve the complex, [the other residents] sent their kids to the playground. Q. Now, was Ms. Hill's children's repeated playing on the grass causing a problem? A. That's true . . . It was causing bare spots to the area. . . . Q. In your notices [to Ms. Hill], did you point out . . . that this was a violation of the lease? A. Yes, I did. Q. Did Ms. Hill respond . . . to your notice to her that she was in violation of her lease? A. She did once. She told me that she didn't want her kids to play at the playground because the guys was looking at her daughters and she wanted them to stay close where she could see them." Further, Hollywood West's maintenance employee testified that the area in question had to be reseeded because of damage caused by children's recreational activity. This evidence alone was sufficient to authorize the factfinder's conclusion that Ms. Hill had breached the rental agreement by failing to prevent her

child/children from causing "repeated damage" to a common area in the apartment complex. The evidence presented also authorized the factfinder's finding that Hollywood West had proper grounds for termination of its lease with Ms. Hill. See *Griffin v. Housing Auth. of Savannah*, 169 Ga. App. 621 (1) (314 SE2d 462), for discussion concerning the role of the trier of fact in cases involving dispossessory actions.

2. In her second enumeration of error Ms. Hill contends the judgment ordering her eviction was invalid because she was not given sufficient notice of the reasons for the termination of her tenancy as is required by the rental agreement she entered into with Hollywood West. The provision upon which Ms. Hill relies requires Hollywood West to notify Ms. Hill in writing of any proposed termination of her tenancy and "state the grounds for termination with enough detail for [her] to prepare a defense." This provision conforms to a regulation promulgated by the United States Department of Housing and Urban Development (HUD) which provides that "[t]he landlord's determination to terminate the tenancy shall . . . state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense . . ." 24 CFR § 247.4 (a) (2).

Hollywood West participates in federal government lower income housing programs that are administered by HUD and is required to adhere to the above regulation. *Smith v. Hendrix*, 162 Ga. App. 299, 300-301 (290 SE2d 504). Generally, failure to comply with this notice requirement will invalidate a HUD regulated landlord's termination of tenancy. 24 CFR § 247.3 (a); *Smith v. Hendrix*, 162 Ga. App. 299, 301 (2), supra. However, in those cases where the tenant has not been harmed by the landlord's failure to provide adequate reasons for the termination of the tenancy, the judgment ordering dispossession of a tenant holding over will not be overruled on appeal. *Smith v. Hendrix*, 162 Ga. App. 299, 301 (2), supra.

"The manifest purpose of the foregoing [regulation] is to afford procedural due process in eviction proceedings to tenants in federally subsidized housing projects, '. . . to cure the evils of discriminatory and arbitrary eviction procedures prevalent in federally-subsidized housing . . .' *Goler Metropolitan Apts. v. Williams*, 43 N. C. App. 648 (260 SE2d 149) (1979); see also *Green v. Copperstone Ltd. Partnership*, 28 Md. App. 498 (346 A2d 686) (1975); *Anderson v. Denny*, 365 F.Supp. 1254 (W.D. Va. 1973)." *Smith v. Hendrix*, 162 Ga. App. 299, 302, supra.

In the case sub judice, even assuming Hollywood West's letter failed to comply with the notice provision of the rental agreement and the subject HUD regulation, we find that Ms. Hill was not deprived of procedural due process because of lack of information concerning the basis of her termination.

We base this conclusion on the fact that Hollywood West sent Ms. Hill a termination letter dated October 2, 1984, stating, among other grounds, that her lease would not be renewed because of: "your son Jimatez playing on the grass, you fail to see that your child/ren play at the playground." Next, Ms. Hill was given 10 days from the date of the letter to discuss the basis of her termination with Hollywood West and 30 days from the date of the termination letter to vacate the leased premises. Finally, and most persuasively, Ms. Hill retained an attorney to represent her in this dispossessory action who filed an answer on her behalf and actively pursued pretrial discovery by filing interrogatories and a subpoena for the production of documents. Under these circumstances, it is a hollow argument to assert harmful error based on lack of notice because of insufficient information concerning the reasons for the termination of her tenancy. If Ms. Hill and her attorney were not aware of the basis for the termination of her tenancy at the time of trial, it was not as a result of a deficient termination letter sent by Hollywood West.

" 'It is an old and sound rule that error to be reversible must be harmful. (Cits.) Thus, when a plaintiff in error . . . brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law but it administers practical law, and corrects only such errors as have practically wronged the complaining party.' *Best Concrete Products Co. v. Medusa Corp.*, 157 Ga. App. 97, 101 (276 SE2d 147) (1981). In our view, the record in [the case sub judice] discloses that [Ms. Hill] was not denied her right to due process, even though the notice provided by [Hollywood West] may not have precisely conformed to the directives of the [rental agreement and the] subject regulations. [Cits.] Therefore, [Ms. Hill] has failed to show that she was 'practically wronged' by the subject enumerated [ruling] of the trial court relating to [Hollywood West's] alleged noncompliance with said [rental agreement and regulation]." *Smith v. Hendrix*, 162 Ga. App. 299 (2), 302-303, supra. Consequently, this enumeration of error is without merit. See *Henderson v. Colony West*, 175 Ga. App. 676 (1), 677 (332 SE2d 331). Compare *Housing Auth. of DeKalb County v. Pyrtle*, 167 Ga. App. 181 (306 SE2d 9).

*Judgment affirmed. Sognier, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Division 1. I concur in the judgment of Division 2 for the reason that I am of the opinion that the trial court was authorized to find that the notice of the reasons for termination, given to the tenant by the landlord, was sufficient. Taken with all of the other evidence that she had been repeatedly warned, both orally and in writing, of the very deficiencies for which she was being termi-

nated, the capsulizing letter identified for her the basis. This dove-tailed with the lease, which specifically provided for termination for "serious or repeated damage to the unit or common areas."

Plus, although only the lease but not the regulations require it, she was expressly notified in the letter of an opportunity to discuss it further with the landlord. So, having been put on notice of what the violations were, she could dispute it and defend against it in the meeting with management. If she needed further particulars, she could get them then or make further inquiry beforehand.

The retention of an attorney to defend against the dispossessory action, and the discovery conducted as part of the litigation, is not relevant to the issue. Appellant complains of the notice given by the landlord, which supposedly prevented her from defending in her pre-suit dealings with the landlord. She is not complaining that the law-suit did not put her sufficiently on notice so as to be able to prepare a defense; if that were the target, instead of what is, then the post-suit revelations would be the deflectors from such an attack.

DECIDED MAY 11, 1987.

*Elizabeth Bentley Watson*, for appellant.
*June D. Green*, for appellee.